NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MICHAEL S. GIGLIO, *Plaintiff/Appellee,*

*v.*

MEHRAN ERIC MIRSHAHZADEH, *Defendant/Appellant.*

No. 1 CA-CV 22-0458
FILED 5-25-2023

Appeal from the Superior Court in Maricopa County
No. CV2019-010471
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Stanley R. Lerner, P.C., Phoenix
By Stanley R. Lerner
*Co-Counsel for Plaintiff/Appellee*

Kevin Koelbel, Esq., Mesa
*Co-Counsel for Plaintiff/Appellee*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, Ross P. Meyer
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1            Defendant Mehran Eric Mirshahzadeh challenges the grant of summary judgment for plaintiff Michael S. Giglio. Because Mirshahzadeh has shown no error, the judgment is affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2            Giglio, Erin Alejandrino, Rebecca Christen and Taylor Wright-Johnson formed Legacy MMA and Fitness, LLC (Legacy) in February 2016. They signed Legacy's Operating Agreement one month later; at that time, Alejandrino held a 40% ownership interest, Giglio held 30%, Christen held 20% and Wright-Johnson held 10%. Mirshahzadeh later bought half of Alejandrino's ownership interest, making him a 20% owner.

¶3            In June 2017, based on Christen's decision not to participate in a capital call, the members signed two amendments to the Operating Agreement. The First Amendment stated that a member who did not consent to a capital call would be "deemed to have relinquished . . . all . . . distributions from the Company" until the consenting members received 200% of the non-consenting member's share of the contribution. The First Amendment also allowed consenting members to choose to limit their participation to their membership interest or carry a proportional part of the non-consenting member's interest.

¶4            The Second Amendment expanded the Operating Agreement's loss allocation provision. Section 4.1 of the original Operating Agreement provided that "[a]ll Profits and Losses shall be allocated to the Members in accordance with their Participation Percentages," to which the Second Amended (as relevant here) added:

> Notwithstanding anything to the contrary contained herein, each tax year that the Company incurs an operating loss, the Members of the Company shall individually make an election to allocate any and all losses

2

based upon each Member's ownership percentage. Members electing to accept the allocation will proportionally share the allocation of any Member(s) who declines to accept the allocation.

¶5   Later in June 2017, the members signed a "2016 Special Allocation Agreement." The Special Allocation Agreement provided that Legacy owed Giglio $155,000 "for certain assets acquired by Legacy to operate its business." All members except Christen agreed "to assume . . . personal liability" for that debt. The members also agreed to allocate "any and all losses" for the 2016 tax year as follows:

| | |
|---|---|
| Giglio: | 37.5% |
| Wright-Johnson: | 12.5% |
| Mirshahzadeh: | 25% |
| Christen: | 0% |
| Alejandrino: | 25% |

Mirshahzadeh later allocated a $22,450 loss from Legacy as an unallowed loss from prior years on his 2017 tax return.

¶6   Legacy later failed as a business. In July 2019, Giglio sued Mirshahzadeh, alleging he had not paid any amounts owed under the Special Allocation Agreement. Mirshahzadeh moved for summary judgment, contending the Special Allocation Agreement was void for lack of consideration and lacked "specificity as to the percentage of personal liability to which the members [were] agreeing to." Giglio cross-moved for summary judgment, contending Mirshahzadeh received adequate consideration via the "capital loss for the year 2016," which he "use[d] . . . in his tax return for 2017."

¶7   Ruling for Giglio, the court stated that Mirshahzadeh "agreed to be liable for his share of Legacy's debt to [Giglio] and, in return, received a 25% share of Legacy's 2016 loss (a total of $22,450). His receipt of the capital loss is evidenced by his 2017 personal tax return where he claimed the $22,450 loss." The court also stated the Special Allocation Agreement "specifically allocates to [Mirshahzadeh] a 25% share of the 2016 operating losses."

**¶8**        Mirshahzadeh timely appealed from the entry of a final judgment. This court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) and -2101(A)(1)(2023).[1]

## DISCUSSION

**¶9**        Summary judgment is proper only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). In addressing a ruling on a motion for summary judgment, this court reviews questions of law de novo, viewing the facts in a light most favorable to the party against whom summary judgment was granted. *In re Est. of Podgorski*, 249 Ariz. 482, 484, ¶ 8 (App. 2020).

**¶10**        This court also reviews de novo whether a contract is valid and enforceable. *Armiros v. Rohr*, 243 Ariz. 600, 605, ¶ 16 (App. 2018). "[F]or an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Regal Homes, Inc. v. CNA Ins.*, 217 Ariz. 159, 166 ¶ 29 (App. 2007) (quoting *Savoca Masonry Co. v. Homes & Son Const. Co.*, 112 Ariz. 392, 394 (1975)). Mirshahzadeh contends, as he did in the superior court, that the Special Allocation Agreement lacked consideration and sufficient specificity.

## I.    The Special Allocation Agreement was Supported by Consideration.

**¶11**        To be enforceable, a contract must be supported by consideration. *See Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.*, 165 Ariz. 25, 29 (App. 1990). Mutual promises are sufficient consideration; they need not be of equal value, and a court does not inquire into their adequacy on appeal. *Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, 321 ¶ 29 (App. 2011). As the Arizona Supreme Court declared more than 60 years ago, "[a] written contract imports a consideration. The burden of showing a lack or failure of consideration is upon the party attacking it." *Dunlap v. Fort Mohave Farms, Inc.*, 89 Ariz. 387, 393 (1961) (citations omitted).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶12          Mirshahzadeh first argues that, before signing the Special Allocation Agreement, he "already had the right to accept or reject a percentage allocation of losses according to the Second Amendment" and that Christen's allocation was "automatically allocated to the other members pro rata." Not so. The Second Amendment allows members to "***make an election*** to allocate any and all losses" in "each tax year." The members made their elections for the 2016 tax year in the Special Allocation Agreement.

¶13          Mirshahzadeh also argues the Special Allocation Agreement lacked consideration because Legacy's debt to Giglio is "a liability that does not exist" and did not increase his "at risk" basis for purposes of federal tax law. *See* 26 U.S.C. § 465(a). Whether a transaction increases a taxpayer's "at risk" basis under federal tax law typically depends on the "economic reality" of the transaction. *Oren v. C.I.R.*, 357 F.3d 854, 859 (8th Cir. 2004); *cf. Goldstein v. C.I.R.*, 364 F.2d 734, 740 (2d Cir. 1966) (requiring transaction "to have purpose, substance, or utility apart from their anticipated tax consequences" for deduction of interest payments under the 1954 Internal Revenue Code). Mirshahzadeh presented no evidence to challenge the economic reality of the Special Allocation Agreement; he only baldly contends on appeal that Giglio did not show that it had "any business purpose." And he admitted he used the $22,450 in allocated loss from the Special Allocation Agreement on his 2017 personal tax return. *See Hartford v. Indus. Comm'n of Ariz.*, 178 Ariz. 106, 110 (App. 1994) ("Adequate consideration consists of any performance which is bargained for"). It was Mirshahzadeh's burden to show the Special Allocation Agreement lacked consideration. *Dunlap*, 89 Ariz. at 393. He failed to discharge that burden.

## II.     The Special Allocation Agreement Had Sufficient Specificity.

¶14          A contract's terms "must be established with sufficient specificity that the obligations involved may be ascertained." *Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605 (App. 1980). A contract is not sufficiently specific if it provides no basis to determine breach or fashion a remedy. *AROK Const. Co. v. Indian Const. Services*, 174 Ariz. 291, 297-98 (App. 1993) (citing RESTATEMENT (SECOND) OF CONTRACTS § 33(2) (1981)).

¶15          Although arguing "there are numerous aspects as to why the certainty of the terms is in question," Mirshahzadeh does not identify any specific aspect. He instead cites Giglio's complaint, which alleged Mirshahzadeh was responsible for the entire $155,000 debt. However, Giglio later withdrew that allegation, and sought to recover 25 percent of the debt in his summary judgment motion. In any event, the allegations of

Giglio's complaint have no bearing on whether the Special Allocation Agreement is sufficiently specific to evince the parties' intent to contract. *See Schade v. Diethrich*, 158 Ariz. 1, 10 (1988) ("Any requirement of 'reasonable certainty' is satisfied if the agreement that was made simply provides 'a basis for determining the existence of a breach and for giving an appropriate remedy.'") (citation omitted).[2]

### III.     Attorneys' Fees and Costs on Appeal.

**¶16**         Both parties request reasonable attorney fees incurred in this appeal under A.R.S. § 12-341.01(A), which permits a discretionary award to the successful party in an action arising out of a contract. Because Mirshahzadeh is not the successful party, his request is denied. Giglio is the successful party and is awarded his reasonable attorneys' fees and taxable costs contingent upon compliance with ARCAP 21.

### CONCLUSION

**¶17**         The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[2] Mirshahzadeh also contends Giglio has not tried to collect from any other Legacy members. Assuming this is true, it is not relevant to whether the Special Allocation Agreement is sufficiently specific.